[Civ. No. 9352.   Third Dist.   June 18, 1958.]

SAMUEL F. FINLEY, Appellant, v. LOLA V. FINLEY, Respondent.

Nichols, Richard, Allard & Williams, Robert N. Connors and Wallace S. Myers for Appellant.

Hilary H. Crawford and Hilary H. Crawford, Jr., for Respondent.

VAN DYKE, P. J.—After a trial upon issues presented by appellant's complaint, respondent's answer thereto, respondent's cross-complaint, and appellant's answer thereto, the trial court, on April 1, 1957, granted to respondent upon her cross-complaint an interlocutory decree of divorce, apportioned the community property, and granted respondent alimony for the term of three years. Appellant herein moved for a new trial. The trial court made certain modifications in the interlocutory decree and denied the motion. From the judgment as modified this appeal is taken.

Appellant and respondent were married December 31, 1937, at which time appellant was a practicing attorney, and respondent was engaged in cosmetology. Each of the parties had two children by a previous marriage, appellant's children being of high school age, while respondent's children were of grammar school age. Save for a short time, appellant's children did not live with the parties hereto, but respondent's children were reared in the common home. In 1947, respondent's mother came to live with the parties and remained in residence with them until they were separated. On August 8, 1941, appellant became the Judge of the Superior Court for Del Norte County, and still holds that office. The parties separated November 29, 1955. There are no children of the marriage. All of the property of the parties was found by the trial court to be community in character. The divorce was granted upon a finding of extreme cruelty and the court found to be untrue the allegations contained in appellant's complaint that respondent had also been guilty of extreme cruelty toward him.

In support of his appeal, appellant makes four assignments of error. They are: 1. The refusal of the trial court to grant a divorce to appellant as well as to respondent; 2. The award to respondent of substantially all of the real property and the greater part of the personal property, while charging appellant with payment of all of the unsecured community debts; 3. The award to respondent of unwarranted alimony; and, 4. Exorbitant attorneys' fees ordered paid by appellant. Appellant does not seek a reversal of the interlocutory decree, but seeks a modification thereof under the terms of section 148 of the Civil Code, and an enlargement of the decree to

include a decree of divorce to appellant as well as to respondent.

In support of his first assignment of error, appellant argues that the record is replete with uncontradicted evidence that respondent breached her marriage obligations long before any violation by appellant by ignoring all duties to her husband, by denying him her love and affection, and by devoting all her time, efforts, attention and earnings to her mother and to her children by her prior marriage.

Concerning this argument little can be said other than that appellant presented substantial evidence in support of his charges against respondent. The evidence on the issue of her failure to keep her marriage vows was conflicting. The trial court upon such conflicting evidence found the appellant's assertions to be untrue, and this court is bound by such findings under the oft-repeated rule that findings of fact substantially supported are binding on appeal. The trial court's denial of a divorce decree to appellant must stand, and we turn to the challenged property division.

The findings did not in all instances reflect the trial court's concept of values, but the memorandum of decision, which appears in the record, states that for the purpose of making its order dividing the community property the court considered Plaintiff's Exhibit Number 1 in evidence as furnishing a detailed outline of the property available for distribution. This exhibit, apparently prepared and submitted by appellant, sufficiently itemized the property and reflected appellant's opinion as to the value of the various items. However, the trial testimony discloses that as to the value of the ranch home and as to the value of the machinery and equipment used in operating it there was sharp conflict.

Appellant asserts that the following tables listing the property awarded to each fairly reflects the values:

To Appellant:

| | |
|---|---|
| Artisan tools | $ 1,642.00 |
| Law Library | 893.00 |
| Withdrawable Retirement Contributions | 3,300.00 |
| Credit with Clausen Motors | 1,100.00 |
| Equity in Plymouth Car | 100.00 |
| Equity in Nash car | 200.00 |
| Guns | 300.00 |

| | | |
|---|---:|---:|
| Vibrachair .......... | 265.00 | |
| Lot ................. | 300.00 | |
| Buggy ............. | 25.00 | |
| Movie Camera ........ | 450.00 | |
| Total ........... | | $ 8,575.00 |
| Community Debts to be paid by appellant..$ | 1,250.00 | |
| Income Tax to be paid by appellant ....... | 1,700.00 | |
| | | 2,950.00 |
| Net Community Interest to appellant..... | | $ 5,625.00 |

To Respondent:

| | | |
|---|---:|---:|
| Fixtures and Furnishings in living room, kitchen, dining room and bedroom of family home ..........$ | 5,265.00 | |
| Ranch equipment and vehicles ........... | 10,435.00 | |
| Net value of Ranch (Note: Appellant asserts greater net value) ............ | 25,000.00 | |
| Cash value of Life Insurance ........... | 1,200.00 | |
| Miscellaneous ........ | 1,424.00 | |
| Net Community Interest to respondent.... | | $43,324.00 |

Respondent does not seriously question these values, and from the record it appears that they are reasonably accurate. For instance, the testimony as to the gross ranch value varied from $30,000 to in excess of $70,000. The property is burdened by secured debts approximating $25,000, so that the value reflected in the foregoing statement adopts a gross value of $50,000. By the modification made on motion for new trial, the court gave to appellant an opportunity for 90 days to sell the ranch at anything over $50,000, retaining any excess. Appellant argues that the term allowed was too short to either accomplish a sale, which in fact appellant failed to accomplish,

or to establish that the value of the ranch was not materially greater than $50,000. Appellant has been required to pay attorneys' fees of $1,850 in the trial court, and $500 on the appeal. He is also ordered to pay $250 a month alimony for three years from April 1, 1957, a total of $9,000.

Appellant describes the situation resulting from the community property division as amounting to stripping him of every asset he had in the world of any commercial value, leaving him burdened with approximately $3,000 in unsecured community obligations, with the payment to respondent for attorneys' fees of $2,350, with the cost of his own attorneys and with the payment of $9,000 in alimony. On the other hand, appellant says that respondent has received $43,324 worth of property, and according to her own testimony has the ability to earn from $200 to $300 toward her own support and maintenance hereafter. We think appellant's summation omits material considerations.

One matter which the trial court undoubtedly considered in its determination as to community property division had to do with the earning capacity of appellant and the value of his retirement rights. Appellant receives a salary of $15,000 a year and has been earning additional sums by being assigned to other courts where the salaries are higher. He invites our attention to the effect of the federal income tax upon his salary, asserting that the tax for a single person is about $5,000 per year, leaving him $10,000 net. From this he must pay state income tax, as well as alimony. He estimates that during the alimony period he will have left about $500 per month, and after the alimony period about $750 per month. Appellant's present term of office will expire December 31, 1960, when he will be 61 years of age and will have served seven months short of 20 years. If he runs for an additional term and is defeated, he can, under the Judges' Retirement Act, receive an annual retirement allowance of approximately $6,000, beginning, however, at age 65. However, the trial court probably considered that he could return to the practice of law. These things are material factors to be considered and there can be little doubt that if his health be good at the end of his present term and if he turn then, willingly or unwillingly, to the practice of the law his widely recognized learning and competence will secure him a reasonable income.

Aside from such aid as she receives through the interlocutory decree, respondent's future is much less encouraging.

She is 53 years of age. She testified that if she tried to return to the practice of cosmetology she would first have to take about eight months' training before she could receive a license. She has worked a number of years as a bookkeeper, earning between $200 and $300 per month. Although her health is presently good, she is of an age that will prove disadvantageous in a competitive labor market.

Although, on the face of the record, the community property division, all things considered, does appear to be a harsh one, the picture is crowded with many imponderables. The secured debt burden on the ranch is serious. The record of production has not been good. Generally losses of considerable magnitude have been suffered. The salability of the property as a farm at the price estimated in the foregoing table appears to be questionable and selling at that figure may be extremely difficult. The witnesses who testified to the highest values leaned heavily upon the adaptability of a portion of the ranch for subdivision. But certainly subdivision would be beyond the capacity of respondent, and the value for such a specialized purpose is, from the record, a matter of speculation. If the ranch's value approximate the lowest value placed on it, $30,000, the net over the debt is so small as to be inconsiderable and the debt threatens seriously the chances that respondent can realize anything.

If, as appellant requests, this court were to revise the distribution of the community property, the change, as we view it, would have to come about through the ordering of a sale of the ranch and that is the suggestion of appellant. If we examine into this, we may speculatively assume that $50,000 would be obtained, from which about $25,000 would have to be paid to clear the ranch of secured debts. The ranch equipment, the furniture and the incidentals listed above at a total value of over $17,000 could hardly be counted on to produce, on sale, any such amount. What they would produce is highly speculative. If now we consider the disparity in the potential earning capacities of the two, and if we consider the comparatively short time within which appellant can qualify for substantial retirement pay, a status achieved during marriage, it becomes apparent that what appears to be a harsh division on first view is shown to have material elements of fairness not at first perceivable.

We feel compelled to conclude that this court ought not in this case to exercise the revisionary power conferred upon

it by section 148 of the Civil Code, and, accordingly, the division of community property will not be disturbed.

So far as the attorneys' fees are concerned, we think the charge that excessive fees were allowed cannot be substantiated. A trial fee of $1,850 and an appellate fee of $500 are not excessive in view of the serious nature of the contest.

The judgment is affirmed.

Peek, J., and Schottky, J., concurred.